ANTHONY SCHELLER, Respondent, v. THE CITY OF NEW YORK, Appellant.

First Department, January 30, 1931.

*Willard S. Allen* of counsel [*J. Joseph Lilly* and *Charles C. Marrin* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel,* attorney], for the appellant.

*Thomas A. Shaw* of counsel [*William C. Scofield, Jr.,* attorney], for the respondent.

MERRELL, J.  On February 3, 1926, plaintiff, then of the age of twenty-four years, was driving a builders' supply truck on Crotona avenue, near its intersection with Crotona Park South, and while the truck driven by plaintiff was at a standstill, the front wheels being partly upon the curb on the right-hand side of the street as the plaintiff was driving, a garbage truck of the defendant, driven by an employee of defendant, ran into and violently collided with the truck in which plaintiff was sitting, wrecking plaintiff's truck, breaking the steering rod, and pinning plaintiff between the steering wheel of the truck and the back of ·the seat upon which he was sitting, and causing him, as he testifies, serious personal and permanent injuries.  The testimony of plaintiff and a disinterested eyewitness to the accident supports plaintiff's claim that the accident was the result of the negligence of defendant's chauffeur in driving defendant's truck which, at the point of the accident, had just come out of Crotona Park South, and in making the turn at an excessive rate of speed causing the defendant's automobile to skid, struck the truck in which plaintiff was seated.  Upon conflicting testimony the jury found that plaintiff's injuries, such as they were, resulted from the negligence of defendant.  The testimony amply justified the verdict of the jury in that respect.  Plaintiff testified that prior to this accident he had never received any injuries in the region of his groin; that immediately after the collision a bystander pulled away the steering wheel which bound plaintiff and assisted him from his seat to the ground.  Plaintiff was at once taken to the Hospital for Ruptured and Crippled, where he remained a period of eleven days.  Plaintiff testified that immediately upon defendant's truck running into his truck he suffered

intense pain in the region of his groin, and in his legs and up his back and running into his testicles. Pla ntiff testified that he never had, prior to that t me, suffered any pain in that region. He testified that his pains continued in severity during the eleven days that he was a patient in the hospital; that during this period an operation was performed upon h m for hernia; that after his discharge from the hospital at the end of eleven days he went to his home, where he remained in bed and remained in his home for a period of three weeks, when he then attempted to resume his work as driver of his employer's truck; that after a day and a half he was compelled to give up his work by reason of the persistent pain in his groin, sides and thighs, and returned to his home where he remained for five months; that during this period he suffered constant pain, continuously in the thighs; that at the end of five months he then attempted to resume his work as a driver, and for another employer worked three days a week in driving a car and continued in such work for four months. Thereafter he worked for his uncle in a garage for five months, but found that the work was too heavy, and he was unable to continue at the same; that he suffered pain constantly in his groin, and was compelled to lay off for a period of three months, when he again resumed his work in a garage and continued for six months; that during all this period his pain continued and he then gave up the work and engaged in selling rugs, but after a time was obliged to discontinue such work. He testified that at the time of the trial he was unable to walk any considerable distance, and that if he did so the muscles of his thighs tied up and he was unable to walk more than four blocks at a time. He testified that prior to the happening of the accident he never had had any pain in his groin.

Plaintiff brought the present action to recover for the injuries sustained. At the trial the attending surgeon at the Hospital for the Ruptured and Crippled was cal ed as a witness for plaintiff and testified that five days after the accident, on February 8, 1926, he made an examination of plaintiff and discovered that he was suffering from a scrotal hernia, and that he immediately operated upon plaintiff, and discharged him as cured eleven days after his admission to the hospital. The hospital surgeon testified at the trial that in his opinion the scrotal hernia from which plaintiff was suffering was not the result of a traumatic injury, but within his experience scrotal hernia resulted from a weakened congenital condition of the patient. The surgeon testified that he did not believe that scrotal hernia resulted from one traumatism. The surgeon testified: "A hernia, to be a scrotal hernia, if you permit me to explain, is — must have existed for a considerable period

of time. *It gradually gets larger and larger and larger through strains.*
Q. And if this man had had some hernia due to some strain would such an accident as this aid in aggravating the condition? A. *It could very easily, yes.* Q. Do you say it would or would not? A. I do not know. I say it could. Q. Have you talked with the Corporation Counsel about this case? A. I have." (Italics are the writer's.)

Later on in his testimony, in response to a question propounded to him by counsel for defendant, the surgeon gave the following testimony: " Q. In your experience, isn't it a fact that hernia very rarely comes from trauma or from blows outside — it is not the general producing cause of hernia, is it, such a hernia as this that you have testified to? A. *Well, that is a debatable question. I do not believe that hernias, many of them, come directly from trauma, one trauma. I believe they may be aggravated by one trauma.*" (Italics are the writer's.)

No other surgeon was sworn at the trial. From the testimony of the surgeon above quoted, the jury might well have found that while, in the opinion of the surgeon, a scrotal hernia did not often come directly from a single trauma, nevertheless, a single trauma might aggravate the condition. If plaintiff's injuries did, in fact, aggravate a latent condition, then the defendant, whose negligence caused his injuries, was properly held to respond in damages. The issues were submitted to the jury by the justice presiding at the trial in a very clear and extremely fair charge, to which no exception was taken by counsel for either plaintiff or defendant. In the course of the court's charge the jury was instructed that " if you find that the plaintiff had an incipient condition, which condition was aggravated by the defendant's neglect, then you would measure your damages with respect to the amount thereof with that consideration in mind." Irrespective of whether plaintiff, as the result of the accident, suffered a scrotal hernia, or whether, as testified to by the surgeon, such an accident " could very easily " aggravate the condition, the undisputed evidence, showing that plaintiff, prior to the accident, had received no injuries nor had he suffered any pain in the region of his injury, and that constantly, since the accident of which he complains, he had suffered severe pains, causing him to relinquish profitable employment in which he had been engaged and which he repeatedly undertook to resume, and that down to the very day of the trial, over four years and a half after his injuries, plaintiff still suffered such pain as prevented him engaging in useful employment, was enough to justify the very modest verdict which the jury rendered in his behalf. Such evidence of the plaintiff was uncontradicted at the

trial. Indeed, it may be remarked in this connection that plaintiff, while alleging in his complaint that, as the result of the accident and the injuries which he sustained, he received painful and permanent injuries, made no claim that the accident produced a scrotal hernia for which he was operated upon and which the surgeon testified was not, in his opinion, caused by the injuries sustained, and upon which last-mentioned testimony the defendant bases its appeal.

We do not think that the verdict of the jury should be disturbed. The judgment appealed from should be affirmed, with costs.

Dowling, P. J., and O'Malley, J., concur; Martin and Sherman, JJ., dissent.

Martin, J. (dissenting). The plaintiff obtained a verdict for injuries which appellant contends were neither directly nor indirectly caused by or the result of the accident which occurred on February 3, 1926. On that day the plaintiff who was twenty-four years of age and employed as a chauffeur, was operating a two and one-half ton open truck in a southerly direction along Crotona avenue on the right side of the street about three feet from the curb.

The plaintiff testified that he observed a truck of the department of street cleaning of the city of New York about one hundred feet away on Crotona Park South, as it was about to make a turn into Crotona avenue. The street was partly covered with ice. The defendant's truck was traveling in a westerly direction. The plaintiff stated that when the street cleaning department truck reached a point at about the center of the intersection of the two streets, it started to turn in a northerly direction and then skidded on the ice. The rear of the truck collided with the front part of the plaintiff's truck, knocked a hole in the radiator and broke the steering post. At that time the plaintiff's truck had been brought to a stop.

The plaintiff was jammed between the steering wheel and the back of the chauffeur's seat and the lower part of his body was caught. After two people had pulled the steering wheel back, the plaintiff was able to get out and he thereafter went in a private automobile to the Hospital for the Ruptured and Crippled on Forty-second street. Plaintiff testified that when he arrived at the hospital he had pains in his groin and legs and was operated on by Dr. T. Wallis Davis five days after the accident for a right scrotal hernia.

He remained in the hospital for eleven days under the care and treatment of Dr. Davis, who testified as to the operation and in answer to a hypothetical question said he was of the opinion that

such an accident was not the competent producing cause of the scrotal hernia.

At the close of plaintiff's case the defendant moved to dismiss the complaint on the ground that the plaintiff failed to prove facts sufficient to constitute a cause of action; that he failed to establish any negligence on the part of the city of New York; and that he in no way connected the hernia with the happening of the accident. The court denied the motion. At the close of the whole case the defendant renewed all motions made at the end of the plaintiff's case and asked for a dismissal of the complaint and for the direction of a verdict and the motion was denied and an exception taken. The jury then returned a verdict in favor of the plaintiff for the sum of $3,500.

The appellant contends that the verdict cannot be sustained on the record before us for the reason that it is unquestionably against the weight of the evidence; that it was proved by plaintiff's doctor that the accident was not the competent producing cause of the scrotal hernia complained of by the p aintiff, and, therefore, there is no basis for a recovery in this action for plaintiff's alleged injury.

In this connection, Dr. Davis, plaintiff's witness — on whose testimony plaintiff relied — testified as follows: " Q. Would a man sitting on the front of an automobile and a collision between a rear of another truck striking the front of his truck and pinning him down between the steering wheel and the back of his seat, he receiving at that time a very severe pain and blow in the abdomen, running from the abdomen down into the back, as he calls it, the scrotum, running from there back towards the back, that condition existing· for one or more days and then on an examination on the 8th of February, if that is correct, it was found he has a scrotal hernia, have you an opinion of which with reasonable certainty as to whether or not such an accident is a competent producing cause for such a condition? A. I have. Q. Is it or is it not in your opinion? A. It is not. Q. There is a condition that brings about the hernia, is it not? A. Yes. Q. Is that usually a weakened congenital condition? A. Well, I believe a person will not get ruptured unless he is congenitally able to have it. Q. Is it your opinion that no person that is ruptured or ordinarily a person has a rupture must have been born congenitally weak in the ring? A. This type of rupture I should say yes. Q. Under these conditions would a person who was born congenitally weak, with a weakened ring, would such an accident as I have described here be a competent producing cause for such a hernia? A. No. Q. What would produce it? A. I believe a scrotal hernia cannot arise within or develop within five days — yes, five days. Q. Was there any

evidence as to whether this was a new hernia or an old hernia or anyth'ng like that? A. A scrotal hernia is in my opinion an old hernia. Q. How can you tell that? A. From past experience and having operated over 2100 cases and having seen probably over 5000 cases and reading the literature. I do not believe a scrotal hernia, as such, comes from one traumatism. Q. There comes a time when this intestine starts down into the scrotum? A. Yes. Q. Can you tell when that is? A. No. Q. Can you tell how long before you saw this man that this intestine had gone down into the scrotum? A. No. Q. Then it is possible that it could have gone into the scrotum that day or the day before or three days or four, five days before, is that correct? A. I do not think so."

The respondent says that the plaintiff never experienced any pain in that region prior to the accident and that upon his examination by Dr. Davis' assistant on February 3, 1926, there was a bruise on the upper part of his leg and he complained of pain in his thigh. He stated that after remaining in bed for five days he was examined by Dr. Davis who found a right scrotal hernia and operated on him for it. Dr. Davis was unable to state as a fact how long it was prior to February eighth that the intestine had gone into the scrotum, but did say he was of the opinion that it was an old rupture.

It is clear from the evidence produced in this case *by the plaintiff* that he must have been suffering from a scrotal hernia for some time prior to this accident. The recovery was upon the ground that the defendant was responsible for the scrotal hernia. The verdict cannot be sustained in view of the testimony of the plaintiff's doctor that the scrotal hernia could not have resulted from the accident.

It is quite evident from the amount of the verdict that the jury charged the defendant with having caused the scrotal hernia or rupture, despite the fact that plaintiff's doctor testified to the contrary. There were no other injuries to warrant such a verdict.

The judgment should, therefore, be reversed and a new trial ordered.

SHERMAN, J., concurs.

Judgment affirmed, with costs.